IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  10-cv-02365-LTB-BNB

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

v.

RADIOSHACK CORPORATION,

      Defendant.

_____

## ORDER

_____

This matter is before me on Defendant RadioShack Corporation's Motion for Summary Judgment **[Doc # 39]**.  Jurisdiction is proper under 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. After considering the parties' arguments, and for the reasons herein, I DENY the motion.

## I. Background

Plaintiff Equal Employment Opportunity Commission brings two claims against Defendant under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621, *et seq*, on behalf of David Nelson, one of Defendant's former employees.  It firstly claims that Defendant disciplined and terminated Nelson on the basis of his age in violation of § 623(a)(1) of the ADEA. It secondly claims that Defendant retaliated against Nelson in violation of § 623(d) by terminating him after he complained of age discrimination. The facts below are undisputed unless otherwise noted.

Nelson was born on September 24, 1952. He began working for Defendant in 1979 as a manager in training.  Following a voluntary departure in 1983, he was rehired in 1985 as a manager trainee and returned to a store manager position shortly thereafter. In 1990, Nelson was promoted

to a district manager position in Defendant's Tacoma, Washington district. Frank Espinoza was the district's regional manager and Nelson's direct supervisor until 2006, when Espinoza was promoted to vice president of operations. Steve Schmidt then became Nelson's regional manager.

In 2006, Defendant formed two "large-format" districts in its Northwest Area–one in Denver, Colorado, and one in Portland, Oregon. A typical district included 15-21 stores. The two new large districts would include roughly 50 stores each. In the spring of 2006, Nelson was selected to move from his Tacoma district to oversee the large Denver district as its district manager. He was 53 years old at that time. In Denver, Nelson continued to report to Schmidt.

In January 2007, Defendant reorganized and reclassified its geographic regions. This required Nelson to report to Northwest Area vice-president Terry Ostheimer. Like he had with Espinoza and Schmidt, Nelson had a good relationship with Ostheimer.

In October 2007, Defendant replaced the 56-year-old Ostheimer with 43-year-old John Wissinger. About that time was when Defendant implemented its Local Market Plan (the "LMP") in the Denver district. The LMP was designed to increase wireless phone sales by providing participating stores with additional resources such as dedicated and specially trained wireless sales people. (Within a LMP district, some stores would be participating in the LMP, and others would not. Those that did not were the "control stores.") Defendant asserts that the Denver district was selected for the LMP because of a decline in wireless phone sales and profits therefrom in 2007.

On December 12, 2007, Wissinger met with Nelson and issued him a "corrective action record," which is a company disciplinary action. Nelson had never before received a corrective action record. Nelson was 55 years old at that time. The corrective action record detailed certain deficiencies in Nelson's performance, which will be discussed *infra*. It was accompanied by an

improvement plan delineating specific goals and action items for Nelson and giving him 60 days to accomplish those things–a period stretching from December 12, 2007, to February 15, 2008.  The improvement plan also provided for a meeting to be held at the 30-day point to assess Nelson's progress.  Wissinger did not hold a meeting with Nelson at that midway point.

Then, in January 2008, Nelson issued corrective action records to Bryan Chun and Ron Donner, his two oldest assistant district managers, ages 49 and 50.  Plaintiff alleges that Nelson did not believe that those records were warranted but that Wissinger ordered him to issue them. Defendant disputes that allegation.

On January 18 and 19, 2008, Wissinger conducted his first meeting with all of the Northwest Area district managers. Before the second day of the meeting, Wissinger called Nelson into a private meeting and issued him a second corrective action record.  The second record identified two concerns with Nelson's performance: his training and onboarding of Vickie Riddle, a woman who had been hired as an assistant district manager and who quit after just three days, and the results of the LMP in Denver. This record prescribed 30-days as the time for improvement. After this private meeting, Wissinger and Nelson proceeded immediately to the second day of the managers' meeting.

Plaintiff alleges that during the ensuing managers' meeting, Wissinger commented that "you don't want to be a 55-year-old DM waking up one morning finding yourself unemployed with no skills."  At that time, Nelson was a "DM," short for district manager, and was 55. Defendant disputes that Wissinger made that comment.

After never receiving corrective actions before Wissinger started and then receiving two in the first four months thereafter, allegedly being ordered to issue records to his two oldest assistant district managers, and Wissinger's alleged comment at the managers' meeting, Nelson believed that

3

Wissinger was discriminating against older employees. So, on January 28, 2008, Nelson sent an email to Espinoza and Jeff Bland, Defendant's senior director of human resources, reporting his concerns. Nelson followed-up the next day with a second email to Bland explaining why he suspected age discrimination and informing him that assistant manager Chun heard the alleged comment at the managers' meeting.

Bland called Wissinger on January 29 or 30, 2008, and told him about Nelson's complaint. Three days later, February 1, 2008, Wissinger decided to fire Nelson, and he did so the next day. When he was fired, Nelson was 55 and was Wissinger's oldest district manager. Wissinger replaced Nelson with the manager of the Colorado Springs, Colorado, district, Eugene Cummings. Cummings was 39. Within a day or two after firing Nelson, Wissinger called assistant district managers Chun and Donner into a meeting. Chun states in his deposition that Wissinger "opened up by saying 'if you ever,' I don't know if I'm allowed to swear, but he used the F-word, 'an f-ing word about what I said in that meeting, I will fly down here and will personally fire you on the spot.' " Wissinger then offered Chun and Donnor promotions to district manager.

The above precipitated this lawsuit, which Plaintiff filed on September 27, 2010.

## II. Standard of Review

Summary judgement per Rule 56 "is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Klen v. City of Loveland, Co.*, 661 F.3d 498, 508 (10th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). Under this standard, the court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005). A fact is "material" if, under the applicable substantive law, it is "essential

4

to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670-71.   To meet that standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim. *Id.* at 671. Instead, the movant needs simply to demonstrate a lack of evidence for the other party on an essential element of that party's claim. *Id.* If the movant meets this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is an genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmovant may not rest upon its pleadings to do so. *Id.* Rather, it must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (internal quotations omitted). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III. Discussion

The ADEA "broadly prohibits arbitrary discrimination in the workplace based on age." *Lorillard v. Pons*, 434 U.S. 575, 577 (1978) (citing 29 U.S.C. § 623(a)).   Among other things, the ADEA makes it unlawful for an employer to discharge an employee because of the employee's age. *See* 29 U.S.C. § 623(a)(1). To prevail on an age discrimination claim, a plaintiff must prove by a preponderance of the evidence that his employer would not have taken the challenged action *but for* his age. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-77 (2009).   A plaintiff does not have

5

to prove that age was the *sole* motivating factor in the employer's decision. *See Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010); *see also Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010). The ADEA also "forbid[s] employers from retaliating against an employee when that employee takes action in opposition to" age discrimination. *See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1122 (10th Cir. 2007).

The parties agree that the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies here. *See, e.g., Timmerman*, 483 F.3d at 1113 ("Where, as here, an employee's . . . age discrimination claim rests exclusively on circumstantial, rather than direct, evidence, we apply the burden shifting scheme of [*McDonnell Douglas, supra*]."); *see also Jones*, 617 F.3d at 1278 (concluding that *Gross*, *supra*, does not preclude the continued application of *McDonnell Douglass* to ADEA claims). That scheme "allows plaintiffs to prove age discrimination using a three-step, burden shifting method of proof." *Jones*, 617 F.3d at 1276 n.3.

The scheme "first allocates the burden of production to the employee to establish a prima facie case of discrimination." *Timmerman*, 483 F.3d at 1113. If the employee successfully does so, "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* Articulating a legitimate, nondiscriminatory reason for the adverse employment action "causes the presumption of discrimination 'to simply drop[] out of the picture.' " *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). The employee then has the full burden to show that the employer discriminated on the basis of age. *Id.*

Defendant's motion assails Plaintiff's claims on multiple grounds. I begin with its challenges to Plaintiff's age discrimination claim.

6

### A. The Age Discrimination Claim

Defendant argues that Plaintiff fails to state a prima facie case of age discrimination and that, even if it does, it fails to marshal sufficient evidence that Defendant's proffered reason for firing Nelson was pretextual. I address these in turn.

### 1. Prima Facie Case

The Tenth Circuit has formulated a four-part test for what a plaintiff must show to state a prima facie case of age discrimination. In *Jones,* it stated that a plaintiff must show that "1) []he is a member of the class protected by the [ADEA]; 2) []he suffered an adverse employment action; 3) []he was qualified for the position at issue; and 4) []he was treated less favorably than others not in the protected class." 617 F.3d at 1279. That same year, it explained the requirements slightly differently, stating a plaintiff must ordinarily prove that "(1) []he is within the protected age group; (2) []he was doing satisfactory work; (3) []he was discharged; and (4) h[is] position was filled by a younger person." *Kosak v. Catholic Health Initiatives of Colo.*, 400 Fed. App'x 363, 366 (10th Cir. Oct. 28, 2010) (unpublished). Regardless of the enunciation, "at the prima facie stage, the plaintiff's burden is not onerous." *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005). To the contrary, it is "slight." *Id.* At this stage, "a plaintiff is only required to raise an *inference of discrimination*, not dispel the non-discriminatory reasons subsequently proffered by the defendant." *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000).

The parties preliminarily contest which formulation applies. Defendant contends that *Kosak* does; Plaintiff asserts that the tests are substantively the same. I agree with Plaintiff. Other Tenth Circuit cases clarify that the formulations in *Jones* and *Kosak* are equivalent and interchangeable. *See, e.g., Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995) ("A plaintiff establishes a prima

facie case of age discrimination by showing that he was (1) within the protected age group; (2) doing satisfactory work (qualified for the position); (3) discharged (or adversely affected by defendant's employment decision); and (4) replaced by a younger person."); *see also Fester v. Farmer Bros. Co.*, 49 Fed. App'x 785, 791 (10th Cir. Oct. 17, 2002) (unpublished). Thus, Plaintiff may establish the four elements either way each one has been enunciated. *See Unisys Corp.*, 54 F.3d at 630.

Defendant concedes that Nelson was within the protected age group, that he was discharged, and that it replaced him with a younger person. *See* Def.'s Mot. at 12. It focuses on the "satisfactory work/qualified for the position" element and argues that there is no genuine dispute of material fact that Nelson's performance was unsatisfactory. Consequently, my inquiry narrows to this element.

To meet its burden, Plaintiff need only "introduc[e] *some* evidence of good performance." *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1420 (10th Cir. 1991) (emphasis added); *accord Paup v. Gear Products, Inc.*, 327 Fed App'x 100, 109 (10th Cir. 2009) ("[A]t the prima facie stage Ms. Shuffitt need only produce 'some evidence of good performance' to carry her burden."). It is not required to show that Nelson's performance was flawless. *See Denison*, 941 F.2d at 1421.

Defendant describes Nelson's purported unsatisfactory performance at great length and argues that it precludes a prima facie showing. *See* Def.'s Mot. 2-7. It is mistaken. "A defendant's evidence regarding an employee's work performance *should not be considered* when determining whether the employee has made a prima facie case of employment discrimination. . . ." *Ellison v. Sandia Nat'l Lab.*, 60 Fed. App'x 203, 205 (10th Cir. March 3, 2003) (emphasis added) (unpublished); *accord Paup*, 327 Fed. App'x at 109 ("[H]owever considerable Gear Products's evidence and though it may be relevant to later stages of the *McDonnell Douglas* inquiry, at the prima facie stage Ms. Shuffitt need only provide 'some evidence of good performance' to carry her

burden."). This is because Defendant's arguments "go to the weight of the evidence of satisfactory performance, not [Plaintiff's] initial burden to produce such evidence." *Denison*, 942 F.2d at 1420. Thus, "[i]f an employer is dissatisfied with the performance of an employee, [it] can properly raise the issue in rebuttal of the plaintiff's showing." *Id.* (quoting *Powell*, 580 F.2d at 1155).

I turn, then, to the evidence that Plaintiff proffers to meets its prima facie burden. It offers deposition testimony from Nelson explaining that he worked for Defendant continuously for 23 years, during which he was promoted numerous times and had never before received a corrective action record. *See* Pl.'s Resp. Ex. 13, 12. Nelson served as a district manager for 18 years before being fired. *Id.* In 2006, he was selected to manage Defendant's new large-format district in Denver, giving him markedly more responsibility. Plaintiff also provides evidence of Nelson's good performance in deposition testimony from his subordinates, peers, and superiors–specifically with regards to his skills in recruiting, training, and developing employees. *See, e.g.*, *id.* Ex. 6 Deposition of Region Director Steve Schmidt (concluding that of nine identified and measured district manager skills, there is "very strong evidence" (the highest rating) that Nelson possessed two of them; there is "strong evidence" (the second highest rating) that he possessed six of them; and "some evidence" (the middle rating) that he possessed one of them); *id.* Exs. 46, 49, 6, 43, 42, 47, 41 (deposition testimonies describing positive aspects of Nelson's performance, with a particular emphasis on his ability to recruit, train, and develop employers and future managers). Nelson also received a bonus for his district's performance in 2007.

This is "some evidence of good performance." *See, e.g.*, *Paup*, 327 Fed App'x at 109 ("[P]laintiffs have put forth evidence, in the form of their lengthy tenures at Gear Products . . . that they were doing satisfactory work."); *Denison*, 941 F.2d at 1420 ("Denison offered evidence that

he had received promotions and pay increases during his tenure, was given no warnings about unsatisfactory performance, and the divisions he worked for were generally profitable. . . . Clearly, Denison met his burden of production by introducing some evidence of good performance.); *Ellison*, 60 Fed. App'x at 205 ("[A] plaintiff may establish his prima facie case by presenting credible evidence that [he] continued to possess the objective qualifications [he] held when he was hired, or by [his] own testimony that [his] work was satisfactory, even when disputed by [his] employer, or by evidence that [he] held [his] position for a significant period of time.") (internal quotations omitted).   Accordingly, Plaintiff has made a prima facie showing of age discrimination.

### 2. Defendant's Reason for Firing Nelson

Because Plaintiff makes a prima facie case of age discrimination, "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Timmerman*, 483 F.3d at 1113.   Defendant asserts that it fired Nelson for poor performance, citing and providing specific evidence in support thereof.   Def.'s Mot. 2-7, 12-14. Poor performance is a legitimate, nondiscriminatory reason for firing an employee.   *See, e.g., Denison*, 941 F.2d at 1421 ("If an employer is dissatisfied with the performance of employee, he can properly raise the issue in rebuttal of the plaintiff's showing.").   While Plaintiff disputes that Nelson was performing poorly, it does not dispute that poor performance, in the abstract, is a legitimate, non-discriminatory reason for firing an employee. The burden thus oscillates back to Plaintiff.

### 3. Pretext

For Plaintiff's age discrimination claim to withstand summary judgment, Plaintiff has the full burden to show that Defendant discriminated on the basis of his age. *Timmerman*, 483 F.3d at 1113.   It may do so by showing that there is a genuine dispute of material fact as to whether

Defendant's proffered reason for firing Nelson is "pretextual-i.e., unworthy of belief." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004); *accord Timmerman*, 483 F.3d at 1113. "Demonstrating pretext enables a plaintiff to survive summary judgment." *Timmerman*, 483 F.3d at 1113.

"Pretext exists when an employer does not honestly represent its reasons for terminating an employee." *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005). A plaintiff need not offer any direct evidence of actual discrimination to show pretext. *Timmerman*, 483 F.3d at 1113. Instead, "pretext may be shown by a variety of evidence and no one type of evidence is required." *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1137 (10th Cir. 2003). A plaintiff "may show pretext based on 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's claimed legitimate, non-discriminatory reason such that a rational trier of fact could find the reason unworthy of belief." *Timmerman*, 483 F.3d at 1113 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). Pretext may also be shown by evidence of prior treatment of the former employee, disturbing procedural irregularities, the use of subjective criteria, that Defendant did not follow its usual procedures, and that plaintiff was treated differently than other employees. *See Jaramillo v. Colo. Jud. Dept.,* 427 F.3d 1303, 1308 (10th Cir. 2005); *Doebele*, 342 F.3d at 1137.

"[O]nce a plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason, [I] presume the jury could infer that the employer acted for a discriminatory reason and must deny summary judgment." *Jones*, 617 F.3d at 1280 (quoting *Bryant*, 432 F.3d at 1125). Plaintiff submits the following as evidence of pretext.

### *i. Persons Involved with Nelson's Firing*

Plaintiff claims certain inconsistencies in Defendant's explanation of who decided to fire Nelson. Defendant identified Wissinger and Espinoza as those who decided to fire Nelson. Defendant also told Plaintiff that Wissinger had recommended to Espinoza that Nelson be fired and that Espinoza told Bland that Nelson was not performing his training responsibilities adequately. Bland's deposition testimony aligned with these answers and added that Espinoza showed him the two corrective action records.

However, Espinoza reported that he had no involvement in Nelson's firing. Nor did he ever see Nelson's improvement plan or talk with Wissinger about firing Nelson. Espinoza stated that it was instead Michael Carter who decided with Wissinger to fire Nelson. Furthermore, Espinoza stated that he had not seen the corrective action records, nor did he tell Bland anything about Nelson's performance regarding his training responsibilities.

### *ii. Defendant's Discipline, Evaluation, and Investigation*

Plaintiff's second category of evidence pertains to Defendant's discipline and evaluation of Nelson and Defendant's investigation of his complaint. Regarding discipline, when Wissinger placed Nelson on the first corrective action record, he also issued a written improvement plan allowing Nelson 60 days to meet the steps and goals outlined therein. Nelson, with Wissinger, wrote out the steps he would take to improve. Several other managers testified that when an employee is placed on a corrective action record and is assigned a time period for improvement, the employee is given the full period to improve. Wissinger, however, fired Nelson two weeks before his 60-day period expired. Furthermore, Wissinger did not follow-up with Nelson on the steps Nelson had mapped or on his progress with respect to the improvement plan. When asked during deposition whether

Nelson had taken any of actions listed in the improvement plan or in Nelson's own list of steps, Wissinger said he did not know. *See* Pl.'s Resp. Ex. 48.

Turning to how Wissinger evaluated Nelson, Defendant's practice was to evaluate and award bonuses for its district managers based on objective criteria of district-wide performance–that is, the district's gross sales and net profit before bonus. Instead, Wissinger evaluated Nelson's performance predominantly on the LMP program, which comprised only 20 percent of his district's business.

Plaintiff also asserts irregularities in Defendant's investigation of Nelson's complaint. Defendant's policy is to investigate complaints of discrimination. Bland was in charge of handling discrimination complaints when Nelson submitted his. Defendant's investigation procedure consists of 11 steps: (1) interview the complaining employee face-to-face; (2) determine with human resources whether the complaining employee should be separated from the employee about whom the complaint was made; (3) interview witnesses face-to-face and gather written statements; (4) interview the allegedly offending employee face-to-face and ask for a written statement; (5) contact human resources; (6) interview face-to-face any other witnesses identified during the investigation; (7) contact human resources to determine what action to take; (8) meet face-to-face with the offending employee and inform him of the outcome of the investigation; (9) meet with the complaining party face-to-face and explain the outcome and action to be taken; (10) prepare a report of the complaint and investigation; and (11) follow-up with the complaining employee again at least twice in the next six months.

Despite knowing this protocol, Plaintiff explains that Bland's investigation consisted of just four steps. First, Bland spoke with Dawn Ross, Defendant's human resource person for the Northwest Area who had attended the manager's meeting in January 2008, and who said she had not

hear the alleged comment.  Second, Bland spoke with one or more of the district managers who were at the meeting, but the only one with whom he could specifically remember speaking was Miguel Lopez.  According to Bland, Lopez said that he did not hear Wissinger make the remark.  Lopez, however, was terminated by Defendant in October 2007, over two months before the meeting in January 2008.  Third, Bland interviewed Wissinger, who denied making the remark.  Fourth, Bland called Nelson by phone and told him that he was unable to corroborate the remark, so he was "closing the book, so to speak, on [Nelson's] concerns."  Bland never interviewed Chun, whom Nelson has specifically identified as having witnessed the remark.  Bland never made notes of his interview nor wrote a report of his investigation.  He also did not investigate Nelson's underlying complaint of age discrimination, that Nelson and other older employees were being placed on performance plans, while younger, lower-performing managers were not.

### iii. Nelson's Performance

As stated, Wissinger's decision to fire Nelson appears to rest primarily upon his district's performance in the LMP program.  *See* Part III.A.2, *supra*.  But Plaintiff first points out that the LMP program related only to wireless sales, which accounted for roughly 20 percent of Nelson's district's business. Moreover, the program was implemented in only 11 of Nelson's 50 stores. Still, Defendant's own records showing district performance in 2007 demonstrate that Nelson's district ranked in the middle of Wissinger's 14 districts on each of the various metrics used to measure district manager performance.  Defendant's area operations director Zhen Wu, who monitored Nelson's district, felt that Nelson was performing well and that the wireless struggles in Denver were not Nelson's fault.  Nevertheless, the only district manager Wissinger fired for his stores' performances in the LMP program was Nelson, the oldest; younger district managers whose districts

were performing below Nelson's kept their jobs.

Espinoza also explained that a district's profitability is a significant factor in evaluating a district manager's performance and that the best objective measure for comparing sales performances of districts is the "net profit before bonus" metric. This is also the metric Defendant used to calculate bonuses.  In 2007, Nelson's district made 86 percent of its planned net profit before bonus, the fifth best among Wissinger's 14 districts.  Of Wissinger's 14 districts, Nelson's district had the sixth highest increase in profits from 2006 to 2007.  Nelson received a bonus for his performance in 2007.  Moreover, Nelson's district was performing well in January 2008, his last full month of work.  At that time, as compared to Defendant's budget plan and the prior year's sales, Nelson's district had the highest net profit before bonus of all Wissinger's districts.

### iv. Wissinger's Reasons for Firing Nelson

Plaintiff's final argument for pretext pertains to the reasons Wissinger articulated for firing him.  Wissinger asserts that he issued the two corrective action records because of deficient performance and that he fired Nelson because he did not meet the records' requirements.

The first deficiency was that Nelson inadequately directed and guided subordinates.  Plaintiff proffers testimony from some of Nelson's former supervisors, higher-ranking employees with direct knowledge, and his subordinates, refuting this criticism, saying that he excelled in this area.  *See* Pl.'s Resp. at 13-15. Wissinger secondly stated that Nelson poorly drove results and communicated company strategies, priorities, and initiatives.  Here again, Plaintiff cites to testimony from Nelson's subordinates and supervisors to the contrary.  *Id.* at 15.

The third area of inadequacy Wissinger identified was Nelson's ability to execute and enforce company processes, procedures, and policies.  But Plaintiff points to evidence that it argues

demonstrates that Nelson was performing satisfactorily in the fall of 2007.   Nelson's operations director, Wu, stated that Nelson's efforts in this area "never deteriorated" and "were always there." In audits and workforce management, Nelson's district was ranked tenth out of 20.   At that time, his district was similarly ranked at or above average with its peers in operational task completion rates.

Wissinger fourthly cites the results of the LMP project in Nelson's Denver district, specifically that the 11 LMP stores and the 51 control stores "saw significant decline in improved performance of unit gain."   However, *all* of Defendant's districts participating in the LMP program–Houston, Dallas, and Denver–were declining in the fall of 2007.   *Id.* And all of those participating districts had control stores outperforming LMP stores.   *Id.*   None of the stores in the Houston and Dallas LMP program reached 100 percent of their goals, but two stores in Colorado did, one of which was Nelson's.   *Id.*   Similarly, Defendant's sales throughout the Northwest Area were declining, not just Denver's.   *Id.* Wissinger's powerpoint from the January 2008 meeting shows that *no* district met its sales plan or gross profit goal. Nelson's district was actually one of the profitable districts in 2007, earning him a bonus. Yet only Nelson, the eldest district manager, was fired.

According to Wissinger, the fifth component of Nelson's purported "poor performance" was his failure to adequately onboard and train Vickie Riddle, the woman Defendant hired as an assistant district manager and who quit her job with Defendant after three days.   Defendant asserts that Riddle resigned because she was dissatisfied with the training Nelson provided.   Plaintiff, however, cites the resignation email from Riddle in which she thanked Nelson "for all the time [he] spent with [her]" those three days.   *See* Pl.'s Resp. Ex. 32.   It again proffers deposition testimony from former colleagues, supervisors, and subordinates praising Nelson for his ability to train and coach

employees. *See, e.g.*, *id.* Exs. 46, 49, 6, 43, 42, 47, 41.  All five of the assistant district managers that

Nelson managed in the two years prior to his termination were promoted to district manager

positions.  Plaintiff also reminds me that Wissinger did not follow-up with Nelson on either of the

corrective action records or the improvement plan and that he fired Nelson without ascertaining

whether he had taken the steps required therein.

That I must view this evidence, draw all reasonable inferences therefrom, and resolve all

doubts concerning pretext, in Plaintiff's favor, cannot be overstated.  *See, e.g.*, *Morgan*, 108 F.3d

at 1324. In so doing, I conclude that the evidence, in its totality, is "sufficient to raise a genuine

doubt about Defendant's motivation."  *See Garret v. Hewlett-Packard Co.*, 305 F.3d 1210, 1220

(10th Cir. 2002) (recognizing that pretext can be shown by aggregated evidence).  While this

determination is based upon the aggregate weight of the evidence, I note a few pieces of the most

salient pieces going to the heart of Defendant's proffered reason for terminating Nelson.  Nelson was

fired early in 2008, purportedly based largely on his performance in 2007, yet he was awarded a

bonus for 2007.  Additionally, a jury could find that during the year and months preceding his

termination–indeed, even at the time he was fired–Nelson, by some of Defendant's own metrics, was

outperforming other, younger district managers.  That notwithstanding, only Nelson, the oldest

district manager, was fired.  And despite claiming that Nelson failed to improve and attain the goals

in the improvement plan and corrective action records, Wissinger states that he "doesn't recall"

whether Nelson in fact did so. With this evidence, added to that above, a rationale trier of fact could

find that Nelson was performing well enough such that his age and not his performance was the but

for cause of his termination.  *See Jones*, 617 F.3d at 1277 (to prevail on an age discrimination claim,

a plaintiff must prove that his employer would not have taken the challenged action *but for* his

age–not that age was the *only* reason he was fired).

Defendant spends much time attacking Wissinger's alleged statement at the managers' meeting in January 2008, contending it lacks probative value of pretext. I need not wrestle vigorously with this argument because Plaintiff does not assert the alleged comment as evidence of pretext. *See* Pl.'s Resp. at 29-36. To the extent Plaintiff does in fact offer the alleged comment for that purpose, contrary to Defendant's assertion, it is not the only evidence of Plaintiff submits to show pretext. Defendant also argues that Nelson's performance progressively declined, that he failed to take the steps outlined in the improvement plan, and that this played a significant role in his termination. Wissinger, however, admits to not knowing whether Nelson fulfilled the improvement plan. Defendant also makes much of the fact that Nelson accuses only Wissinger of discrimination and that Nelson never before complained of such treatment. Viewing the evidence and reasonable inferences therefrom in Plaintiff's favor, however, a jury could conclude that Wissinger initiated and spearheaded age discrimination.

With respect to the evidence Plaintiff proffers to show pretext, Defendant cites conflicting evidence and argues that what it proffers outweighs what Plaintiff proffers, but Defendant neglects two crucial precepts. First, it is clear that in the employment discrimination context, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (quoting *Anderson*, 477 U.S. at 255). Most pertinently for this case, then, given the evidence on both sides, the ultimate determination of whether Nelson was performing satisfactorily is for the jury. Second, I must resolve all doubts of pretext in Plaintiff's favor. As a corollary, any uncertainty as to whether Plaintiff was performing poorly must be resolved in Plaintiff's favor–and

Plaintiff raises such a doubt.  Similarly, Defendant contends that various emails or statements by Nelson unequivocally show that he knew he was a poor performer.  An interpretation in Plaintiff's favor, however, could lead a jury to reasonably infer that Nelson was taking accountability and attempting to propitiate his supervisors in an effort to keep his job.

In short, when examined under the proper standards, the record raises a fact issue as to whether Defendant's reason for firing Nelson was pretextual.  It does not "conclusively reveal[] some other, nondiscriminatory reason for [Defendant's] decision," *Reeves*, 530 U.S. at 148,  nor "does [it] contain the requisite 'abundant and uncontroverted independent evidence that no discrimination had occurred,' " either of which would support summary judgment for Defendant. *Doebele*, 342 F.3d at 1137 (quoting *Reeves*, 530 U.S. at 148). Accordingly, I deny the motion.

### B. The Retaliation Claim

Defendant's challenges to Plaintiff's retaliation claim parallel its earlier arguments.  It first asserts that Plaintiff fails to make a prima facie case and, second, that Plaintiff fails to show that its proffered reasons for firing Nelson was pretextual. Like the age discrimination claim, when the plaintiff does not offer direct evidence of retaliation, the *McDonnel Douglas* burden-shifting framework delineated *supra* applies.  *See, e.g.*, *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1207-08 (10th Cir. 2007).  The parties agree that this scheme applies here too. I thus start by assessing whether Plaintiff shows a prima facie case of retaliation.

### 1. Prima Facie Case

"In order to establish a prima facie case of retaliation, an employee must show that: '(1) []he engaged in protected activity; (2) []he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action.' " *Timmerman*, 483 F.3d

at 1122-23 (quoting *Duncan v. Mgr., Dep't of Safety*, 397 F.3d 1300, 1314 (10th Cir. 2005)). The parties agree that Plaintiff shows the first two elements, but they disagree as to the third. I therefore circumscribe my inquiry accordingly.

Plaintiff "may establish a causal connection by proffering evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Annett*, 371 F.3d at 1240 (10th Cir. 2004) (internal quotations omitted). "[T]he closer [the adverse action] occurred to the protected activity, the more likely it will support a showing of causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Here, Nelson's protected activity–his complaint to Bland and Espinoza–occurred on January 28, 2008. He was terminated just five days later, on February 2. Under Tenth Circuit jurisprudence, this temporal proximity suffices to demonstrate causation for purposes of establishing a prima facie case. *See, e.g., Ramirez v. Okla. Dept. of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (concluding that a six week period between protected activity and adverse action may, by itself, establish causation), *overruled on other grounds by Ellis. v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1194-95 (10th Cir. 1998)); *Anderson*, 181 F.3d at 1179 (assuming that temporal proximity of two months and one week is sufficient to support a prima facie case of retaliation); *Annett,* 371 F.3d at 1240 ("Temporal proximity between Annett's previous lawsuit, resulting in a verdict rendered in March 2000 with post-trial motions continuing into June 2000, and the University's decision not to interview and hire Annett in May 2000 and June 2000 respectively, suffice to demonstrate causation for the purpose of establishing a prima facie case."). Plaintiff therefore states a prima facie case of retaliation.

### 2. Defendant's Reason for Firing Nelson

Because Plaintiff has established a prima facie case of retaliation, the burden shifts to

Defendant to proffer a nondiscriminatory reason for firing Nelson.  *See Annett*, 371 F.3d at 1240.

As stated in Part III.A.2, *supra*, Defendant asserts that Nelson was terminated due to poor

performance and proffers supporting evidence.  This is a legitimate, nondiscriminatory justification

sufficient to shift the burden back to Plaintiff. *See* Part III.A.2, *supra.*

### 3. Pretext

For the retaliation claim to withstand summary judgment, Plaintiff must proceed to show that

there is a genuine issue of material fact as to whether Defendant's proffered reason for firing Nelson

is "pretextual–i.e., unworthy of belief." *Annett*, 371 F.3d at 1240.  To that end, Plaintiff relies on

the evidence explicated in Parts III.A.3.i-iv, *supra*, as well as the timing of Nelson's firing.  I

concluded that Plaintiff's evidence raises a genuine issue of material fact regarding pretext. The

parties agree that this evidence and my determination apply here. I therefore incorporate them by

reference.  *See* Part III.A.3, *supra.* Consequently, I deny this portion of Defendant's motion.

## IV. Conclusion

For the foregoing reasons, IT IS ORDERED that Defendant's Motion for Summary

Judgment **[Doc # 39]** is DENIED.

Date: June ___18___, 2012 in Denver, Colorado.

BY THE COURT:

___s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE