IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02365-LTB-BNB

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

                Plaintiff,

v.

RADIOSHACK CORPORATION,

                Defendant.

---

**PLAINTIFF EEOC'S MOTION FOR EQUITABLE RELIEF**

---

This matter was tried to a jury from September 10 through 17, 2012. The jury found that Defendant RadioShack willfully retaliated against David Nelson, and awarded $187,706.00 in back pay, and a RadioShack Lifetime Discount card. Under the ADEA, once liability is established through such a verdict, Plaintiff is entitled to such "equitable relief as may be appropriate to effectuate the purposes of this chapter." 29 U.S.C. §626(b). Additionally, when there has been a finding that Defendant's violation of the Act was willful, Plaintiff is entitled not only to the back pay amount determined by the jury, but also to "an additional equal amount as liquidated damages." 29 U.S.C. §626(b) and §216(b). Plaintiff now submits this motion seeking an award of liquidated damages based on the finding of willfulness, as well as equitable relief, including reinstatement and/or front pay, an additional award of damages to offset the tax penalty Plaintiff will

1

face because of receipt of the damage awards in one tax year, and other non-monetary injunctive relief.

## I.     Liquidated Damages

The ADEA provides that liquidated damages "shall be payable" when an employer is found to have willfully violated the Act. 29 U.S.C. 626(b). This provision is enforced in accordance with powers, remedies, and procedures provided in 29 U.S.C. 216(b). *Id.* In addition to the plain language of the statute that such damages "shall" be awarded, the Fifth Circuit has held that once a finding of willfulness has been made, an award of liquidated damages is mandatory. *Tyler v. Union Oil Co,* 304 F.3d 379, 389 (5th Cir. 2002). Accordingly, EEOC moves for entry of an award of liquidated damages in an additional amount equal to the back pay damages awarded by the jury – $187,706.00.

## II. Lifetime RadioShack Discount Card

Although the award by the jury of a lifetime discount card may not be an appropriate legal remedy within the power of the jury to award, it does serve as an indication of what the jury thought would be appropriate equitable relief. Plaintiff submits that such an award is within the Court's equitable power "to effectuate the purposes of the ADEA." Mr. Nelson testified that the discount card was meaningful to him not just because of the discount, but more because it enabled him to visit a RadioShack store and enjoy the experience of demonstrating that he was a long-term employee of the company. Accordingly, Plaintiff requests the Court to order Defendant to provide Mr. Nelson with the card.

### III. Reinstatement or Front Pay

#### A. Front pay, rather than reinstatement, is appropriate in this case.

Under the ADEA, the Court can award reinstatement, or front pay in lieu of reinstatement, to make the aggrieved employee whole. *EEOC v. Prudential,* 763 F.2d 1166, 1171-72 (10th Cir. 1985). Reinstatement is the preferred remedy whenever it is appropriate; when it is not appropriate, however, the injured employee is entitled to an award of front pay. *Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 638 (10th Cir. 1988) (reversed on other grounds by *Hazen Paper v. Biggins,* 113 S.Ct. 1701 (1992)). It is not necessary that the aggrieved employee request reinstatement as a prerequisite to obtaining front pay. *Prudential* at 1173 n.2; *Anderson.,* 861 F.2d at 638.

In *Prudential,* the Tenth Circuit recognized that reinstatement is the preferred remedy, but held, "Reinstatement may not be appropriate, however, when the employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible." 763 F.2d at 1172. This concept was broadened in *Anderson,* where the Tenth Circuit described other situations in which reinstatement is not appropriate – for example, where the employer-employee relationship has been irreparably damaged by the animosity of the lawsuit, or where the factfinder can reasonably predict there is no reasonable prospect of finding comparable alternative employment, or when no comparable positions are available with the employer. *Anderson,* 861 F.2d at 638. The Tenth Circuit has also recognized that a jury's finding of willfulness is a factor that can be considered in the decision to award

front pay.  *Lemons v. ICM Mortgage Corp.,* 1991 U.S. App. LEXIS 19754 (unpublished opinion attached).

In a case with factual similarities to the present one, *Abuan v. Level 3 Communications,* 353 F.3d 1158 (10th Cir. 2003), the Tenth Circuit again addressed the appropriateness of reinstatement under the ADEA and Title VII.  There, Mr. Abuan was assigned a new supervisor who demoted Abuan shortly after becoming his boss.  Abuan complained to Human Resources that he was the victim of discrimination, and asked for an investigation.  Rather than conduct an investigation, Human Resources notified the supervisor of Abuan's allegations.  The supervisor embarked on a course of retaliatory action, and although Abuan was not terminated, he did lose out on opportunities for promotions, bonuses, and raises.  At the time of trial, he was in a lower position and compensation level than he should have been, and he was selected for layoff shortly after winning the trial.  Abuan moved for equitable relief, and asked for an award of front pay rather than reinstatement.  Determining that reinstatement was not appropriate, the district court noted Abuan's belief that his future with the company was dim, and stated that "whether or not this perceived animosity was real, it has destroyed Plaintiff's ability to be an effective member of Defendant's workforce."   353 F.3d at 178.  The Court ordered front pay for two years at the amount of Abuan's compensation at the time he was constructively discharged, which was $245,160.00 *Id.* at 1168.  The Tenth Circuit affirmed the holding that front pay was appropriate, but remanded for reconsideration of the amount because the district court had not awarded enough front

pay to compensate for the promotions Abuan had lost out on because of discrimination. *Id.* at 1179-80.

Also instructive is the Tenth Circuit's holding in *Spulak v. K Mart Corp.,* 894 F.2d 1150, 1157 (10th Cir. 1990). There, Spulak was fifty-eight and had worked for K Mart for eleven years when he was assigned a new manager in February 1985. *Id.* at 1153-54. Within a month, the new boss initiated an investigation of Spulak, and told him he was going to fire him if he didn't retire. Spulak announced his retirement in March, and left on May 1, 1985. *Id.* He then pursued and won an age discrimination claim, and the jury found he had been constructively discharged, which was affirmed by the Tenth Circuit. *Id.* at 1153-54. Spulak then sought and obtained front pay instead of reinstatement, arguing that he had been humiliated in front of his employees by the investigation his new boss had initiated, and that he feared retaliation based on what he had experienced in the past. The Tenth Circuit affirmed the district court's award of front pay, based on those arguments.

Here, the same arguments apply. RadioShack made a great deal of effort during this litigation to publicly paint Nelson as a bad manager, which would undoubtedly undermine his ability to effectively manage if he were reinstated. Additionally, the retaliation Nelson suffered after Wissinger learned Nelson had complained about him supports Nelson's fear of further retaliation if he returned to work at RadioShack, particularly given the fact that Wissinger is now even higher up in the chain of command. *See* Rough Transcript of Wissinger Testimony, Ex.1 at 1-2.

The evidence at trial regarding RadioShack's conduct demonstrates the point. Within two days of learning that Nelson had complained about Wissinger engaging in age discrimination, Wissinger decided to fire Nelson, and the jury concluded that this decision was willfully retaliatory. When he flew into Denver and fired Nelson, Wissinger told Nelson that he could not work with liars, and that Nelson was a liar and had "gone to the dark side." In his notes of that meeting, Wissinger admits he fired Nelson for making "false claims" against Wissinger. And RadioShack adopted Wissinger's statement when it responded to Nelson's EEOC charge, repeating that Wissinger told Nelson that the termination was for "deliberately making false claims against him." Trial Ex. 124 at EEOC 00116.

Defendant further evidenced its hostility toward Mr. Nelson when it refused to provide Nelson with the "softer landing" (i.e., some form of severance benefits) he requested in his email to Frank Espinoza, sent a week before Nelson's complaint of age discrimination. Defendant also failed to provide, or even offer, any outplacement services to help Nelson find employment elsewhere, although RadioShack had done exactly that for others who were being terminated without having made discrimination complaints. For example, Terry Ostheimer testified that he had been terminated just four months before Nelson, and had been provided with outplacement services.

Finally, the risk of hostility and the possibility of further retaliation will be present if Mr. Nelson is reinstated. Mr. Wissinger, who called Nelson a liar when he fired Nelson, has since risen in the company to become the Divisional Vice President for RadioShack's West Division. This includes twenty states in the western U.S., from

Minnesota west to Washington, south to California, and east to Kansas and Nebraska, and the division includes Colorado.  His subordinates include six Regional Directors, sixty-six District Managers, and between 5,000 and 6,000 employees in 1,200 RadioShack stores.  Ex. 1 at 1-2.  Thus, if Mr. Nelson is reinstated near his home in Colorado or anywhere in the western United States, Mr. Wissinger will be in a very powerful position in Nelson's chain of command, and the risk of more retaliation would be high.

Therefore, the evidence at trial establishes that reinstatement of Mr. Nelson is not a suitable option.  In situations where reinstatement is not appropriate, the Court can award such front pay (or "future damages") as will return the aggrieved party "as nearly as possible to the economic situation he would have enjoyed but for the defendant's illegal conduct."  *Prudential,* 763 F.2d at 1173.  Accordingly, front pay is an appropriate remedy in this case.

### B.  Calculation of Front Pay

The factors relevant to assessing a front pay award are work life expectancy, salary and benefits at time of termination, potential salary increases through regular promotions and cost of living adjustments, the reasonable availability of other work opportunities, the period within which the employee may become re-employed with reasonable efforts, and methods to discount any award to net present value.  *McInnis v. Fairfield Communities, Inc.,* 458 F.3d 1129, 1145 (10th Cir. 2006).

### i.     Work Life Expectancy

If an evidentiary hearing is held on this issue, Mr. Nelson is expected to testify that if he had not been fired, he planned to work until normal retirement age, in the range of 65 to 67 years old.  *See* Nelson Declaration, attached as Exhibit 2.  However, at present, he intends to continue running his pottery business indefinitely because of the financial strain he has suffered as a result of his termination.  *Id.*  Mr. Nelson turned sixty, on September 24, 2012, the week after the trial concluded.

### ii.    Salary and Benefits at Time of Termination

Trial testimony established that Mr. Nelson's total compensation package, including benefits, was approximately $120,000.00 per year.

### iii.   Potential Increases in Salary

EEOC's expert, Dr. Bob LaJeunesse, has estimated a growth in wages of 1.8% annually.  See LaJeunesse Declaration attached hereto.

### iv.    Availability of Other Work Opportunities, and the Period Within Which Mr. Nelson may become re-employed.

At Mr. Nelson's current age, 60, and in the current economic condition of the U.S., there are very few other work opportunities for Mr. Nelson that would match the job from which RadioShack fired him.  He has established himself in his pottery business, and expects business to continue to grow as it has in the past few years.  Plaintiff submits that the assumptions made by Dr. LaJeunesse as to Mr. Nelson's future income in the pottery business are reasonable, and these assumptions have been incorporated into Dr. LaJeunesse's updated report, attached hereto as Exhibit 3.

### v. Method to Reduce Requested Award to Present Value

Dr. LaJeunesse has reduced the amount of requested front pay to present value by calculating reductions on a monthly basis, using the discount rate that is the average of the market yield on U.S. Treasury securities at 1-year constant maturity, with interest compounded monthly. In accordance with Dr. LaJeunesse's report, Plaintiff moves the Court for an award of front pay for Mr. Nelson to age 66, which totals $598,441.00.

### IV. Tax Penalty Offset

If frontpay is awarded, Mr. Nelson will be paid the entire award at once, which will cause him to be in a higher tax bracket for the year in which he receives the award, and will be penalized by paying a higher tax rate. In order to make Mr. Nelson whole, Plaintiff EEOC requests that the Court award an additional amount to offset the penalty Mr. Nelson will have to pay to the IRS.

The Tenth Circuit has approved such an approach. In *Sears v. Atchison, Topeka, & Santa Fe Railway,* 749 F.2d 1451 (10th Cir. 1984), the Court upheld an award which included a tax component to compensate for the additional tax liability caused by a lump sum payment, noting that under the tax at that time, the employees could only use income averaging over a three-year period, and the penalty was significant. *Id.* at 1456-57[1]. In doing so, the Court noted that "the trial court has wide discretion in fashioning remedies to make victims of discrimination whole." *Id.* at 1456.[2] Of

---

[1] In *Sears*, the court distinguished its earlier decision in *Blim v. Western Electric Co., Inc.* 731 F.2d 1473 (10th Cir 1984), holding that no adjustment should be made because the plaintiff could offset the tax penalty by income averaging over five years.
[2] Although *Sears* was a Title VII case, the same reasoning applies in the ADEA context. *Sears* also contains dicta in its discussion of the tax offset ruling in *Blim* which is incorrect: "an important factor in that decision was the liquidated damages provision, . . . providing for an automatic doubling of the back pay

significance here is the fact that income averaging has been completely eliminated from the tax code as of the Tax Reform Act of 1986, 26 U.S.C. §1305 (repealed 1986). Thus, Mr. Nelson cannot spread the tax liability into any year other than that in which he receives the lump sum payment.

Dr. LaJeunesse has calculated that a reasonable estimate of the added tax penalty Mr. Nelson will have to pay is 20% of the lump sum he is awarded. Therefore, EEOC requests that the Court enhance the total award to Mr. Nelson by increasing the lump sum by 20% to truly make Mr. Nelson whole.

**V. Non-Monetary Equitable Relief**

Once liability is established, plaintiff is entitled to injunctive relief, as well as other equitable relief "as may be appropriate to effectuate the purposes of the Act." 29 U.S.C. §626(b). EEOC submits that such relief should include training; posting notices regarding retaliation; policy review and, if necessary, changes; and reporting requirements.

"Generally, a person subjected to employment discrimination is entitled to an injunction against future discrimination." *EEOC v. Goodyear Aerospace Corp., 813 F.2d 1539, 1544* (9th Cir. 1987). Injunctive relief will deter defendant from future unlawful discrimination and would protect an aggrieved employee from retaliation." *Id. at 1543.*

---

award to make up, in part, for the delays in receipt of payment." *Id.* at 1546. In fact, *Blim* does not make such a statement in its discussion of an award to offset the tax penalty. Rather, the decision states, "Because plaintiffs will suffer no significant tax penalty [because of 5-year income averaging], the court's award for increased tax liability was improper." 749 F.2d at 1480.

Once a violation of a statute is proven, the defendant must demonstrate that there is no reasonable expectation that the wrong will be repeated; a failure to do so renders an injunction mandatory. *U.S. v. W.T. Grant Co., 345 U.S. 633 (1953); EEOC v. Hacienda Hotel, 881 F.2d 1504, 1519* (9th Cir. 1989). In determining whether or not to order equitable relief, a court must determine whether there is a "cognizable danger of recurrent violations." *EEOC v. General Lines, Inc., 865 F.2d 1555, 1565* (10th Cir. 1989); see also *James v. Stockham Valves and Fitting Co., 559 F.2d 310, 354* (5th Cir. 1977)("absent clear and convincing proof of no reasonable probability of further noncompliance with the law a grant of injunctive relief is mandatory.")  Indeed, "the district court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Abermarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975).*

In this case, trial testimony established that Defendant did not properly investigate Mr. Nelson's allegations of discrimination, and also did nothing to ensure that he was not the victim of retaliation.  To the contrary, the company's Senior Director of Employee Relations, Jeff Bland, immediately called Mr. Wissinger and told him that Nelson was accusing him of age discrimination.  Although the company had a detailed procedure for investigating discrimination complaints and protecting the complainant, and although Mr. Bland was a 30-year Human Resources professional who had helped author the procedure, he did not follow it, but rather enabled Wissinger to engage in the retaliatory discharge of Mr. Nelson.  Moreover, when Mr. Nelson filed his charge of discrimination, the company had another opportunity to investigate this retaliatory termination and

11

remedy the wrongdoing at that time. But RadioShack elected instead to fully endorse the termination, thereby eliminating any argument the company might assert that Mr. Wissinger was merely a rogue manager and his conduct not emblematic of the company as a whole. Indeed, Defendant's failure to adequately investigate either Mr. Nelson's initial complaint to the company or his charge of discrimination, calls into serious question the adequacy of the company's training and practices for investigating employee complaints of discrimination and ensuring that employees who report or complain about discrimination are not subjected to retaliation. Thus, EEOC believes that injunctive relief is necessary to ensure compliance with the ADEA.

The Commission's request for non-monetary relief includes several components. First, Plaintiff requests that the Court permanently enjoin RadioShack from retaliating against any employee or former employee who complains of discrimination, opposes any act or practice made unlawful by the ADEA, or files a charge, testifies, assists, or participates in any manner in an investigation, proceeding, or hearing thereunder.

Second, Plaintiff requests that Defendant be required to implement other remedial measures, including but not limited to annual employee and management trainings on retaliation, and review and/or revision of its employment discrimination policies and reporting requirements. RadioShack's willful violation of its obligations under the ADEA – in particular, investigating complaints of discrimination and protecting the complaining employee from retaliation -- highlights the need for additional training. See *Robinson v. Jacksonville Shipyards, 760 F. Supp. 1486, 1544 (M.D. Fla. 1991)*(defendant ordered to

conduct sexual harassment training to remedy the effect of its past discriminatory practices).

Third, the Commission requests that Defendant be required to post a notice advising its employees of the Court's remedial orders and their right to complain about or oppose discrimination free from retaliation, and advising employees of their right to contact federal and state anti-discrimination agencies. Such notice will serve the dual purpose of educating RadioShack's current and future employees regarding their rights and remedies under the ADEA and reminding RadioShack managers of the obligation to uphold those rights.

Finally, to ensure compliance with the injunctive order, the Commission respectfully requests that the Court order RadioShack to monitor complaints of discrimination and retaliation, and provide quarterly reports to EEOC summarizing any complaints and investigations for a period of two years.

## VI.   Witnesses for Evidentiary Hearing

If the Court orders an evidentiary hearing on the equitable issues, EEOC intends to present the testimony of David Nelson regarding his pre-termination intentions regarding retirement, his current expectations about retirement, and his reasons for believing that reinstatement is not an appropriate remedy in this case.  EEOC also provides Mr. Nelson's declaration on these topics, attached hereto.  EEOC expects that its direct examination of Mr. Nelson will require no more than 30 minutes of testimony.

EEOC also intends to present the testimony of Dr. Robert LaJeunesse, the economic expert who testified at trial regarding back pay.  A summary of Dr.

LaJeunesse's conclusions is also provided herewith in a declaration. His testimony is expected to also take no more than 30 minutes on direct examination.

Finally, EEOC will rely on trial and deposition testimony of Mr. Bland to establish the need for the non-monetary injunctive relief sought, including training, posting, and quarterly reporting to the EEOC. This deposition testimony was already been read into evidence at the trial.

## VII. CONCLUSION

The EEOC requests that the court enter judgment on the jury's verdict, and for liquidated damages and further equitable relief, as follows. Initially, judgment should be entered on the jury's verdict of $187,706.00. Judgment for liquidated damages in an additional equal amount also should be awarded (an additional $187,706.00). Because reinstatement is not a viable option, EEOC believes that judgment should be entered for front pay in lieu of reinstatement, in the amount of $598,441.00, which represents front pay through age 66, and includes reduction to present value. EEOC also believes that in order to compensate Mr. Nelson for the high tax rate he will be paying upon receipt of a lump sum award, the Court should enter judgment for an additional 20% of the total amount awarded to offset the additional tax burden Mr. Nelson will have to bear, in the amount of $194,771.00 (i.e., 20% of the back pay, liquidated damages, and front pay). Therefore, the total monetary judgment sought by the EEOC is $1,168,624.00.

Additionally, EEOC requests that the Court enter an appropriate injunctive order enjoining Defendant from further violations of the ADEA, as well as other equitable relief requiring Defendant to conduct employee and management training on retaliation, post

a notice, review and revise its EEO policies, and report quarterly to EEOC on the company's handling of employee complaints of discrimination.  And finally, EEOC requests that the Court order Defendant to provide David Nelson with a Lifetime RadioShack Discount card, as recommended by the jury.

Dated this 7th day of October, 2012.

                Respectfully Submitted,

                RITA BYRNES KITTLE
                Supervisory Trial Attorney
                Telephone: (303) 866-1347
                E-Mail:  rita.kittle@eeoc.gov

                s/ *William E. Moench*
                WILLIAM E. MOENCH
                Trial Attorney
                Telephone: (303) 866-1378
                william.moench@eeoc.gov

                EQUAL EMPLOYMENT
                OPPORTUNITY COMMISSION
                Denver Field Office
                303 East 17th Avenue, Suite 410
                Denver, CO   80203
                Facsimile: (303) 866-1375
                Attorneys for Plaintiff EEOC

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Gregory A. Eurich
geurich@hollandhart.com

Joseph Neguse
jneguse@hollandhart.com

                *s/ William E. Moench*