IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 10-cv-02365-LTB-BNB

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

v.

RADIOSHACK CORPORATION,

      Defendant.

_____

## ORDER
_____

This matter is before me on Plaintiff Equal Employment Opportunity Commission's ("EEOC") Motion for Equitable Relief **[Doc #89]**. Pursuant to the conference held on November 28, 2012, *see* Doc #93, I address only the questions of law raised in the motion. After considering the parties' arguments, for the reasons herein, I GRANT the motion in part and DENY it in part.

### I. Background

EEOC brought two claims against Defendant RadioShack Corporation ("RadioShack") under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621, *et seq.*, on behalf of David Nelson, a former RadioShack employee. The first was that RadioShack discriminated against Nelson on the basis of his age in violation of § 623(a)(1) of the ADEA. The second was that it retaliated against him in violation of § 623(d) by firing him for complaining of age discrimination.

The case was tried to a jury from September 10 through September 17, 2012. The jury found as follows: RadioShack did not terminate Nelson because of his age. *See* Docket # 88 Attach. 1, Redacted Verdict Form at 1. It did, however, retaliate against Nelson because he complained of age

discrimination and, in doing so, willfully violated the ADEA. *Id.* at 1-2. The jury thus rendered a verdict against EEOC's discrimination claim but in favor of its retaliation claim. Turning to damages, at trial EEOC sought $561,622 in back pay for Nelson. The jury found that Nelson failed to make reasonable efforts to mitigate his damages. *Id.* at 2. As a result, the jury reduced the amount that it determined would compensate Nelson for his lost wages and benefits resulting from RadioShack's retaliation by the amount it calculated he would have made had he properly mitigated his damages. *Id.* The jury awarded Nelson $187,706 for his lost wages and benefits, as well as a "Lifetime RadioShack Discount Card" (the "Discount Card"). *Id.*

## II. Discussion

EEOC now moves for equitable relief and liquidated damages per 29 U.S.C. §§ 626(b) and 216(b), respectively. EEOC requests five things: (1) liquidated damages; (2) the Discount Card; (3) front pay; (4) a tax penalty offset; and (5) injunctive relief. I examine these *seriatim.*

### A.
### Liquidated Damages

EEOC firstly seeks liquidated damages equal to the amount of back pay the jury awarded–$187,706.00. The ADEA incorporates § 216 of the Fair Labor Standards Act ("the FLSA"). *See* 29 U.S.C. § 626(b); *EEOC v. Prudential Fed. Sav. and Loan Ass'n.*, 763 F.2d 1166, 1171-72 (10th Cir. 1985). Section 216 of the FLSA provides that "[a]ny employer who violates the provisions of [the Act] shall be liable to the employee . . . affected in the amount of [his] unpaid minimum wages . . . as the case may be, *and in an additional equal amount as liquidated damages*." 29 U.S.C. § 216(b) (emphasis added). Amounts owed to an employee for a willful violation of the ADEA "shall be deemed to be unpaid minimum wages." *Id.* at § 626(b). The Fifth Circuit has held that once there is a finding of willfulness by the employer, as there was here, an award of liquidated

2

damages is necessary. *Tyler v. Union Oil Co.*, 304 F.3d 379, 389 (5th Cir. 2002). RadioShack does not dispute that a liquidated damages award is appropriate, nor does it dispute the appropriateness of the amount EEOC seeks. Accordingly, I grant this portion of the motion.

## B.
## The Discount Card

EEOC next requests that I order RadioShack to provide Nelson with the Discount Card. It argues that awarding the card is within my "equitable powers" and that I should do so because it would "effectuate the purposes of the ADEA." RadioShack opposes. I agree with RadioShack.

As an initial matter, I must determine whether the Discount Card is an equitable or legal remedy. In *Downie v. Independent Drivers Ass'n Pension Plan*, 934 F.2d 1168 (10th Cir. 1991), an employee filed suit seeking, among other relief, the restoration of certain retirement benefits and service credits that he had earned during his employment and that were terminated. The Tenth Circuit construed this relief as equitable. *Id.* at 1170-71; *accord Callery v. U.S. Life Ins. Co. in City of New York*, 392 F.3d 401, 407 (10th Cir. 2004) (relief in *Downie* was "a clear equitable remedy").

The Discount Card is akin to the relief the plaintiff sought in *Downie* in that it is a benefit that only RadioShack employees can earn through long-term employment. The Discount Card is also not money, "the classic form of legal relief." *See Gorman v. Carpenters' & Millwrights' Health Benefit Trust Fund*, 410 F.3d 1194, 1201 (10th Cir. 2004); *see also J.R. Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1115 (10th Cir. 2009) ("The general rule is that monetary relief is legal."). Plaintiff all but concedes that the card is an equitable remedy. *See* Pl.'s Mot. at 2. For these reasons, I conclude that the Discount Card constitutes equitable relief. Consequently, the power to award it lays with me, not the jury. *See, e.g.*, *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1425 (10th Cir. 1991) ("Both parties agree there is a split among the circuits on whether to

3

characterize the calculation of front pay damages as a legal issue, for the jury, or an equitable issue, for the court.").

District courts have "considerable discretion" when deciding whether to award equitable remedies. *Boutwell v. Keating*, 399 F.3d 1203, 1207 n.1 (10th Cir. 2005) (citing *Stitching Mayflower Recreational Fonds v. Newpark Res., Inc.*, 917 F.2d 1239, 1245 (10th Cir. 1990)). EEOC argues that I should exercise this discretion to award the card because that would "effectuate the purposes of the ADEA," but it fails to say what those purposes are or to even cite them. EEOC further argues that the card was meaningful to Nelson because of the discount and because it enabled him to visit a RadioShack store and to demonstrate that he was a long-term employee of the company. But EEOC again fails to proffer any legal authority for this argument, leaving its request for the card devoid of legal support. Absent that and more developed arguments, I am not persuaded that awarding the Discount Card is warranted. Accordingly, I deny this portion of the motion.

## C.
## Front Pay or Reinstatement

EEOC thirdly requests front pay or reinstatement and that front pay is more appropriate. RadioShack disagrees with a front pay award. It contends that Nelson is precluded from receiving front pay because the jury found that he failed to mitigate his damages. I conclude that reinstatement is inappropriate and that Plaintiff is entitled to front pay.

Under the ADEA, a court can award reinstatement, or front pay in lieu of reinstatement, as an equitable remedy. *See Prudential*, 763 F.2d at 1171-72 (citing *Blim v. Western Elec. Co.*, 731 F.2d 1473, 1478-79 (10th Cir. 1984)). "[R]einstatement is the preferred remedy under the ADEA and should be ordered whenever it is appropriate." *Id.* at 1172. When it is not appropriate, "an award of future damages in lieu of reinstatement furthers the remedial purposes of the ADEA by

assuring that the aggrieved party is returned as nearly as possible to the economic situation he would have enjoyed but for the defendant's illegal conduct." *Id.* at 1173. Front pay is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001). It "[i]s intended to compensate victims of discrimination for the continuing *future* effects of discrimination until the victim can be made whole." *Pitre v. Western Elec. Co., Inc.*, 843 F.2d 1262, 1278 (10th Cir. 1988).

In this case, the parties agree that reinstatement is inappropriate. *See* Pl.'s Mot. at 3-7; Def.'s Resp. at 3 n.1. The question thus becomes whether front pay in lieu thereof should be awarded. RadioShack answers in the negative. Citing a host of cases, it asserts that Nelson is precluded from receiving front pay because the jury found that he failed to mitigate his damages. *See Hughes v. Bd. of Regents of the Univ. of Colo.*, 967 F.Supp. 431, 435 (D. Colo. 1996); *Dilley v. SuperValue Inc.*, 296 F.3d 958, 967-68 (10th Cir. 2002); *McInerny v. United Air Lines, Inc.*, 463 Fed App'x 709, 725 (10th Cir. 2011); *Leidel v. Ameripride Services, Inc.*, 276 F.Supp.2d 1138 (D. Kan. 2003); *Richardson v. Tricom Pictures & Productions, Inc.*, 334 F.Supp.2d 1303, 1318 (S.D. Fla. 2004).

I disagree with RadioShack. To begin, the cases that it cites do not lend it succor. The first case, *Hughes*, 967 F.Supp. at 435, indeed asserts that "[t]he law requires [a] plaintiff to take reasonable steps to mitigate h[is] damages before [he] may be eligible for front pay." As the basis for that assertion, *Hughes* cites only *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1158 (10th Cir. 1996). *See id.* The problem, however, is that I do not read *Spulak* as standing for that proposition. In *Spulak*, a former K Mart employee sued K Mart under the ADEA, alleging that he had been constructively discharged from his job with K Mart as a result of illegal age discrimination. 894

5

F.2d at 1152. The jury returned a verdict for the plaintiff and awarded him back pay and liquidated damages. *Id.* The district court ruled post-trial that the plaintiff was entitled to front pay in lieu of reinstatement. K Mart appealed. *Id.* On appeal, K Mart contended, *inter alia*, that the record did not support the district court's decision to award front pay in lieu of reinstatement and that the district court erred in failing to adjust the damages to reflect the plaintiff's alleged failure to mitigate. *Id.* at 1157. The Tenth Circuit first held that there were no grounds for disturbing the district court's decision to award of front pay in lieu of reinstatement. *Id.* at 1158. It then held that the plaintiff had presented sufficient evidence of mitigation to send the issue to the jury. *Id.* Importantly, *Spulak* never stated that a plaintiff's failure to mitigate his damages bars him from receiving front pay. *See id.* Furthermore, its analysis suggests otherwise: the court in *Spulak* addressed the appropriateness of the front pay award *before* addressing the mitigation issue, intimating that the former is not dependant upon the latter as a matter of law. For these reasons I respectfully disagree with *Hughes*'s interpretation of *Spulak* and, consequently, *Hughes*'s assertion regarding mitigation and front pay.

RadioShack also cannot rely on *Dilley, supra*, or *McInerney*, *supra*. While the court in *Dilley* stated that "[m]itigation is relevant to determining a plaintiff's entitlement to back pay, . . . and front pay," whether a plaintiff's failure to mitigate precluded his recovery of front pay was not even an issue on appeal. *See* 296 F.3d at 967 (internal citations omitted). Nor did the court in *Dilley* state in dicta that, as a matter of law, the failure to mitigate precludes recovering front pay. *See id.* In fact, the Tenth Circuit again suggested to the contrary by stating that "courts routinely find that a plaintiff's failure to mitigate negates or reduces his claim for back pay or front pay, . . ." *Id.* at 968. I interpret this to mean that, as a factual matter, Nelson's failure to mitigate bears on the amount of front pay to be awarded in that it may diminish or offset front pay. But that failure does not preclude

him from being entitled to front pay as a matter of law. *McInerney* is similar. There, the Tenth Circuit merely held that "the district court did not abuse its discretion in denying front pay because McInerney's attempt to calculate front pay at the hearing was inadequate." *McInerney,* 463 Fed App'x at 725. This is not tantamount to a conclusion that the failure to mitigate bars a recovery of front pay as a matter of law.

The remaining cases RadioShack cites do not compel me to agree with it either. For one, neither *Leidel*, 276 F.Supp.2d 1138, nor *Richardson*, 334 F.Supp.2d 1303, is controlling. Moreover, *Leidel* is consistent with *Spulak*, *supra*, and *Dilley*, *supra*, in that it did not state that the failure to mitigate precludes a front pay award as a matter of law. Rather, whether to award front pay when the plaintiff there failed to reasonably mitigate front pay damages by quitting two comparable jobs was within the court's discretion. *See Leidel*, 276 F.Supp.2d at 1147.

My review of these cases leaves RadioShack's contention that a failure to mitigate precludes recovering front pay unsupported. To the contrary, I glean from them that in the Tenth Circuit, the question of whether to award front pay (and in what amount) when a plaintiff fails to mitigate damages is a factual matter. RadioShack also fails to persuade me that on the basis of logic or equity that Nelson's failure to mitigate should have the asserted preclusive effect. *See* Def.'s Resp. 3-6. Nelson's failure to mitigate reduced his back pay recovery, but it did not bar his recovery altogether as a matter of law. Moreover, his failure was not so great as to completely negate his back pay award as a factual matter. Given the obvious symmetries between back pay and front pay, I am unconvinced that his failure to mitigate nevertheless has the qualitatively different, more onerous consequence of precluding any recovery of front pay as a matter of law.

Accordingly, I conclude that reinstatement is not appropriate and that, as a matter of law, Plaintiff's failure to mitigate does not preclude him from receiving front pay in lieu of reinstatement. I therefore grant EEOC's motion insofar as it seeks front pay in lieu of reinstatement. *See* Pl.'s Mot. at 3-7.  The amount of front pay, however, is a question of fact which remains.

## D.
## Tax Penalty Offset

EEOC penultimately requests a tax penalty offset. It argues that if front pay is awarded, Nelson will be paid the entire award at once, in a lump sum, subjecting him to a higher tax rate and, thus, a higher tax penalty. In order to make Nelson whole, EEOC argues that Nelson is entitled to receive an additional amount to offset the increased tax penalty.  Defendants argue that an offset is inappropriate because it would give Nelson an improper windfall.  I agree with EEOC.

District courts "ha[ve] wide discretion in fashioning remedies to make victims of discrimination whole." *Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1456 (10th Cir. 1984).  The Tenth Circuit has countenanced a district court exercising that discretion to award a tax penalty offset. In *Sears*, the district court included a tax component in its back pay award to compensate plaintiff class members for their additional tax liability as a result of receiving over 17 years of back pay in one lump sum.  *See id.* at 1456.  On appeal, the Tenth Circuit stated that although "[a] tax component may not be appropriate in a typical Title VII case," *Sears* presented special circumstances. *Id.*  These special circumstances included the litigation's protracted nature as well as the tax regulations at the time. The court-ordered back pay awards would likely place the living members of the plaintiff-class in the highest income tax bracket on much of the back pay they would receive. *Id.* And even if the class members averaged their income, which the tax code allowed at that time, they could only use a three-year average. *Id.* Moreover, many of the class

members had died and were thus ineligible for income averaging. For these reasons that Tenth Circuit held that a district court did not abuse its discretion when it included the tax component. *See id.*

In rendering this decision, the Tenth Circuit distinguished *Sears* from *Blim*, *supra*. *See Sears*, 749 F.2d at 1456. *Blim* was an age discrimination case in which it the Tenth Circuit held, *inter alia*, that awarding a tax component was inappropriate because it determined that the plaintiffs would suffer no significant tax penalty. 731 F.2d at 1480. This was because, at that time, the "tax laws contain[ed] five-year averaging provisions that [would] eliminate nearly all of any penalty that would otherwise result from receipt of a lump sum payment." *Id.* This five-year averaging provision would also apply to liquidated damages, should they have been taxable. *Id.*

Under *Sears* and *Blim*, I conclude that Nelson may receive a tax penalty offset award. Those cases put great emphasis on the plaintiff-recipient's ability or inability to reduce the tax penalty through income-averaging provisions. Significantly, income averaging was eliminated from the tax code as of the Tax Reform Act of 1986, 26 U.S.C. § 1305 (repealed 1986). Nelson will therefore be unable to spread his lump sum award over a multi-year period and, consequently, will likely be forced into a higher–and perhaps the highest–income tax bracket. In this way he is similarly situated to those deceased class members in *Sears*. Unlike the plaintiffs in *Blim*, then, Plaintiff would indeed suffer a significant tax penalty, leaving him with less than he would have had but for his termination. As stated, I am to exercise my equitable powers to make Nelson whole. *See Sears*, 749 F.2d at 1456. I conclude that to do so, Nelson may need to receive a tax penalty offset award. This would not be a windfall, as RadioShack asserts, but would simply place Nelson in the financial situation he would have been in had he not been fired.

9

Accordingly, I grant the motion insofar as it seeks a tax penalty offset as a matter of law. Whether such an offset is verily needed to leave Nelson whole as a result of a tax penalty and, if it is, what amount, are questions of fact that remain.

## E.
## Injunctive Relief

EEOC lastly seeks certain injunctive relief. It requests an order permanently enjoining RadioShack from retaliating and requiring RadioShack to implement remedial measures such as annual training on retaliation; to post notices advising employees of their ADEA rights; to monitor complaints of discrimination and retaliation; and to provide quarterly reports to EEOC summarizing any complaints and investigations for a period of two years. RadioShack contends that this relief is inappropriate. I agree with RadioShack.

"[T]he purpose of injunctive relief is to prevent future violations." *E.E.O.C. v. General Lines, Inc.*, 865 F.2d 1555, 1565 (10th Cir. 1989) (citing *United States v. W.T. Grant Co.*, 345 U.S. 629 (1953)). "The likelihood of future violations is inferred from the totality of the circumstances, including the commission of past illegal conduct." *Id.* To obtain such relief, "the moving party must demonstrate that there exists some cognizable danger of recurrent violations, something more than a mere possibility, which serves to keep the case alive." *Id.* (citing *W.T. Grant Co.*, 345 U.S. 629).

EEOC fails to make such a showing. Nothing from trial or the instant motion indicates "some cognizable danger" that RadioShack will retaliate against an employee in violation of the ADEA in the future. This case was about a single act of discrimination and retaliation against one employee by a lone RadioShack supervisor. The jury determined only that the lone RadioShack supervisor–John Wissinger–had retaliated against Nelson but that Nelson was *not* discriminated against on the basis of his age. EEOC's argument here relies solely on the single occurrence of

retaliation. There is no evidence that RadioShack has any unlawful employment "practice" or "policy" that it followed, nor is there evidence establishing a pattern of retaliation. There is thus no reason to believe that the single unlawful act "will likely occur again." *See id.*; *see also Drez v. E.R. Squibb & Sons, Inc.*, 674 F.Supp. 1432 (D. Kan. 1987) ("The court can summarily dismiss plaintiff's requested injunctive relief. When there is no proof of a pattern or practice of discrimination, an injunction barring an employer from continuing alleged discriminatory practices is not appropriate."); *Layman v. Gutierrez*, 2007 WL 4061971, *4 (D. Colo. Nov. 15, 2007) (unpublished) ("Put simply, a finding that Defendant discriminated against one individual on the basis of disability is not, standing alone, sufficient to warrant mandating the entire Department of Commerce post an anti-discrimination notice."). I therefore conclude that the requested injunctive relief is unwarranted. *See General Lines*, 865 F.2d at 1565. Accordingly, I deny this portion of EEOC's motion.

## IV. Conclusion

For the foregoing reasons, IT IS ORDERED that EEOC's Motion for Equitable Relief **[Doc #89]** is GRANTED in part and DENIED in part as set forth above. IT IS FURTHERED ORDERED that an evidentiary hearing be scheduled so as to resolve the remaining pertinent factual issues.

Date: December   6  , 2012 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE